IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **PAUL REED CONSTRUCTION & SUPPLY, INC.**, a Nebraska corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**ARCON, INC.**, a Colorado corporation, and **GRANITE RE, INC.**, an Oklahoma corporation,<br><br>Defendants. | CASE NO. 8:12CV48<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 54) filed by Defendant Granite Re, Inc. ("Granite Re"). The Motion is supported by briefs (Filing Nos. 54-1, 58) and evidence (Filing Nos. 54-2 through 54-12, 58-1, 58-2), and Plaintiff Paul Reed Construction and Supply, Inc. ("PRCS"), has filed a brief (Filing No. 56) and index of evidence (Filing No. 57) in opposition to the Motion. For the reasons discussed below, the Motion will be granted.

## FACTUAL BACKGROUND

The following facts are those that are stated in the briefs and supported by pinpoint citations to evidence in the record, that the parties have admitted, or that the parties have not properly resisted as required by NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

---

[1] *See* NECivR 56.1(b)(1) (effective December 1, 2011):

> The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party

PRCS is a corporation organized and existing under the laws of the State of Nebraska. Defendant Arcon, Inc. ("Arcon"), is a corporation existing under the laws of the State of Colorado. Granite Re is a surety organized and existing under the laws of the State of Oklahoma.

The Nebraska Department of Roads ("NDOR") owns a construction project named the NDOR Project No. IM-80-3 (105) in Keith County, Nebraska (the "Project"). NDOR entered into a contract with Upper Plains Contracting, Inc. ("UPCI"), to serve as general contractor for the Project. Third-Party Defendant Western Surety Company ("WSC") furnished a payment and performance bond (the "Contract Bond") under which the principal was UPCI and the obligees were NDOR and other project subcontractors and suppliers. The Contract Bond states:

> The condition of the obligations is such that, whereas, the above bounden [UPCI] has been awarded by [NDOR] . . . various groups of work . . . on Project No. **IM-80-3(105) in KEITH** County(ies), Nebraska . . . which . . . is incorporated herein and made a part hereof as fully and amply as if said contract were recited at length herein.
>
> NOW THEREFORE, if said [UPCI] as principal shall in all respects fulfill this said contract according to the terms and tenor thereof, and shall faithfully discharge the duties and obligations therein assumed, then the above obligation is to be void and of no effect; otherwise to be and remain in full force and virtue in law.
>
> It is expressly understood and agreed that this bond is given to secure and does secure not only the faithful performance by the principal herein named of said contract for the construction work as specified in said contract and in strict accordance with the terms of said contract and the plans, specifications and all special provisions made a part thereof; but that it is given to secure and does secure also the payment by said bounden [UPCI] of all overpayments made to said principal by [NDOR],

---

relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

PRCS filed its opposition brief on October 25, 2012. NECivR 56(b)(1) has since been amended, effective December 1, 2012.

> and of all just claims to all laborers and mechanics for labor that shall be performed, and for the payment of all material, supplies and equipment which is used or rented in performing the contract, and for the payment of all taxes, including contributions and interest due under the Nebraska Employment Security Law, which may accrue, pursuant to Sections 77-3103 to 77-3112 or any other provision of law, to the State of Nebraska and the political subdivisions thereof on account of the execution and performance of this contract, and if such payments be made then this obligation shall be null and void; otherwise it shall remain in full force and effect.

(Filing No. 3, at CM/ECF p. 9.)  The penal sum under the Contract Bond is $25,650,084.21.  (*Id.*)

UPCI subcontracted with PRCS to perform some of the work for the Project.  On March 28, 2011, PRCS subcontracted with Arcon to perform some of its work, relating to crushing concrete, for the Project (the "Arcon Subcontract").  (Filing No. 2, at CM/ECF p. 16.)  Provisions of the Arcon Subcontract the parties contend are relevant to this matter include the following:

> **II.**  To pay for all tools, labor, equipment, supervision, services, supplies and materials used in, or in connection with the performance of this contract, when and as bills or claims therefore become due, and to save and protect the premises, the owner, and [PRCS] from all claims and mechanics liens on account thereof, and to furnish satisfactory evidence to [PRCS] when and if required, that he has complied with the above requirements. . . .
> 
> **XV.**  To obtain, effect, maintain and furnish to [PRCS] during the life of this contract, if required by [PRCS], an acceptable surety bond in an amount equal to the contract price conditioned upon and covering the faithful performance of, and compliance with all the terms, provisions, and conditions of this contract. . . .
> 
> **XVII.**  [PRCS] may, after (3) days written notice of default to the [Arcon], terminate the whole or any part of this Subcontract in any one of the following circumstances: (a) if [Arcon] fails to complete the work by the completion date; (b) if [Arcon] fails to prosecute the work in a timely manner and with such diligence as in the opinion of [PRCS] will ensure its timely interim or final completion; (c) if [Arcon] fails to comply or becomes disabled from complying with any requirement of the Subcontract; (d) a

3

petition in bankruptcy or for the appointment of a receiver is filed against [Arcon]. . . .

**XXIV.**  [PRCS] agrees to pay [Arcon] for furnishing the materials and performing the work as specified herein, the sum of:  $384,190.13 subject to additions and deductions for charges agreed upon or determined as hereinafter provided. . . .

**XXV.**  [Arcon] shall be required to obtain a payment bond in sufficient amount to cover all labor and material costs, and to obtain a performance bond in an amount equal to 100% of the subcontract price.  The penal amount of the performance bond shall equal 100% of the subcontract price, and shall be written on the bond form attached herto [sic], or a reasonably equivalent substitute as determined by the sole discretion of [PRCS].

(*Id.* at CM/ECF p. 16-22, ¶¶  II, XV, XVII, XXIV, XXV.)  Prior to executing the Arcon Subcontract, on March 18, 2011, PRCS sent Arcon an email inquiring whether it would "be able to provide a performance bond[.]"  (Filing No. 54-6, at CM/ECF p. 2.)[2]

On April 21, 2010, Granite Re executed a bond, titled "SUBCONTRACT PERFORMANCE BOND," with Arcon (the "Arcon Bond"), under which Arcon is the principal, PRCS the obligee, and Granite Re the surety.  (Filing No. 11-2.)  The Arcon Bond states:

WHERAS, [Arcon] has by written agreement dated 3/28/2011  , entered into a subcontract with [PRCS] for:  NDOR Project #IM-80-3 (105), Keith County [Project #10-4511, All Work in Accordance With the Bid Proposal Dated 3/23/2011]__, hereinafter called Subcontract, which Subcontract . . . is hereby by reference made a part hereof and specifically incorporated herein.

NOW THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if [Arcon] shall promptly and faithfully perform said subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

---

[2] Granite Re also points to the Affidavit of Donna Schultejann (Filing No. 58-2, at CM/ECF p. 6-9), Arcon's president, in which Schultejann testified that PRCS informed her that it would not require Arcon to furnish a payment bond.  (*Id.* at ¶¶ 1, 4-6.)

4

>Whenever [Arcon] shall be, and be declared by [PRCS] to be in default under the Subcontract, [PRCS] having performed [PRCS]'s obligations thereunder, [Granite Re] shall:[ ]
>
>(1)   After notice by [PRCS], promptly remedy the default subject to the provisions of paragraph 3 herein, or;
>
>(2)   After notice by [PRCS], promptly arrange for the performance of [Arcon]'s obligation under the Subcontract subject to the provisions of paragraph 3 herein;
>
>(3)   The balance of the Subcontract Price, as defined below, shall be credited against the reasonable cost of completing performance by the Subcontract. If completed by the [PRCS], and the reasonable cost exceeds the balance of the Subcontract Price, [Granite Re] shall pay to the [PRCS] such excess, but in no event shall the aggregate liability of [Granite Re] exceed the amount of this bond. If [Granite Re] completes the work under the Subcontract or remedies the default, that portion of the balance of the Subcontract Price as may be required to complete the Subcontract or remedy the default and to reimburse [Granite Re] for its outlays shall be paid to [Granite Re] at the times and in the manner as said sums would have been payable to [Arcon] had there been no default under the Subcontract. The term "balance of the Subcontract Price," as used in this paragraph, shall mean the total amount payable by [PRCS] to [Arcon] under the Subcontract and any amendments thereto, less the amounts heretofore properly paid by [PRCS] under the Subcontract. . . .
>
>No right of action shall accrue on this bond to or for the use of any person or corporation other than [PRCS] . . .

(*Id.*) The penal sum of the Arcon Bond is $384,190.13. (*Id.*) PRCS provided the form on which the Arcon Bond was executed. Granite Re did not change any of the form's language prior to the execution of the Arcon Bond.

Arcon purchased and/or leased materials and/or equipment from vendors, including Intermountain Construction Equipment, Inc. ("ICE"), and Equipment Rental Source, LLC ("ERS"), to perform work on the Project. ICE and ERS claim that Arcon failed to pay all amounts due for the materials and equipment purchased and/or leased

5

from them, and have filed payment claims against WSC based on the Contract Bond. UPCI is withholding payments otherwise owed to PRCS pending the resolution of ICE's and ERS's claims. PRCS has not paid ICE's or ERS's claims.

Granite Re contends that Arcon completed its work on the Project in a manner satisfactory to PRCS. To support its contention, Granite Re points to an email exchange between PRCS and Granite Re's attorney-in-fact, a surety account manager with Moody Insurance Company. On July 29, 2011, the Granite Re's attorney-in-fact sent an email to PRCS that stated:

> Arcon . . . informed me that the . . . [P]roject has been completed. In order for us to close out the bond, would you please fill out the enclosed document and send back to me? Please sign the document as well. If you have any questions, please feel free to give me a call.

(Filing No. 54-6, at CM/ECF p. 13.) PRCS's response stated:

> They did complete the project and we were happy with how they performed. We have not heard back from the state on some possible deducts for a very small amount of material not meeting specifications so I cannot complete your form as of yet. When I have this info I will complete the form. There is also an issue with an invoice sent to PRC that we do not agree with. They have threatened to file a claim against us so until that is worked out we will not be able to complete this.

(*Id.*) PRCS argues that "Arcon failed to complete work on the Project," citing to paragraphs II and XXIV of the Arcon Subcontract (which relate to payment obligations), and noting that ICE and ERS have submitted bond claims for non-payment by Arcon.

The distinction between performance bonds and payment bonds is common and typical in the construction and surety industries. PRCS and Granite Re each have separate standard forms for performance bonds and payment bonds. (Filing Nos. 54-8 through 54-11.) PRCS's standard performance bond form is titled "**SUBCONTRACT PERFORMANCE BOND**," and states:

6

> WHEREAS, Principal has by written agreement dated _____ entered into a subcontract with Obligee for _____ . . . which subcontract is by reference made a part hereof, and is hereafter referred to as the subcontract.
>
> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the Principal shall promptly and faithfully perform said subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.
> Whenever Principal shall be, and be declared by Obligee to be in default under the subcontract, the Obligee having performed Obligee's obligations thereunder:
> (1)   Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or;
> (2)   Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 therein;
> (3)   The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract.  If completed by the Obligee, and the reasonable cost exceeds the balance of the subcontract price, the Surety shall pay to the Obligee such excess, but in no event shall the aggregate liability of the Surety exceed the amount of this bond.  If the Surety arranges completion of remedies the default, that portion of the balance of the subcontract price as may be required to complete the subcontract or remedy the default and to reimburse the Surety for its outlays shall be paid to the Surety at the times and in the manner as said sums would have been payable to Principal had there been no default under the subcontract.  The term "balance of the subcontract price," as used in this paragraph, shall mean the total amount payable by Obligee to Principal under the subcontract and any amendments payable by Obligee to Principal under the subcontract and any amendments thereto, less the amounts heretofore properly paid by Obligee under the subcontract. . . .
> No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee named herein[.]

(Filing No. 54-8.)

PRCS's standard payment bond form is titled "**SUBCONTRACT LABOR AND MATERIAL PAYMENT BOND**," and states:

> WHEREAS, Principal has by written agreement dated _____ entered into a subcontract with Obligee for _____ . . . which

7

subcontract is by reference made a part hereof, and is hereafter referred to as the subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the subcontract, then this obligation shall be void; otherwise, it shall remain in full force and effect, subject, however, to the following conditions:

(1) A claimant is defined as one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract . . .

(2) The above-named Principal and Surety hereby jointly and severally agree with the Obligee that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon.  The Obligee shall not be liable for the payment of any costs or expenses of any such suit.

(3) No suit or action shall be commenced hereunder by any claimant,
 (a) After the expiration of one (1) year following the date on which Principal ceased work on said subcontract it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.
 (b) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated, and not elsewhere.

(4) The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder.

(Filing No. 54-9.)[3]

On January 27, 2012, PRCS filed its Complaint (Filing No. 1, at CM/ECF p. 7-14) in the District Court of Scotts Bluff County, Nebraska, seeking declaratory relief in its first cause of action relating to the Arcon Subcontract, and damages in its second and third cause of actions. PRCS alleges in its second cause of action that Arcon breached the Arcon Subcontract. PRCS alleges in its third cause of action that Granite Re failed, in violation of the Arcon Bond, to remedy Arcon's alleged breach of the Arcon Subcontract. On February 3, 2012, Arcon removed the action to this Court. (Filing No. 1). Granite Re's Motion seeks the dismissal of PRCS's third cause of action.[4]

## STANDARD

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Serv., Inc.,* 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)). The court will view "all facts in the light most favorable to the non-moving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S.

---

[3] The Court will not set out in detail the language of Granite Re's standard performance bond form (Filing No. 54-10) and standard payment bond form (Filing No 54-11). The Court notes, however, that Granite Re's standard forms appear to be substantially similar to PRCS's standard forms with respect to the guarantees made therein.

[4] On February 15, 2012, Granite Re filed an Answer to PRCE's Complaint in which it asserted a cross-claim against Arcon for indemnity, subrogation, and unjust enrichment, and a third-party complaint against Third-Party Defendants Transcentral Management, LLC, and Schultejann. (Filing No. 11.)

317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)), *cert. denied,* 130 S. Ct. 1074 (2010). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita,* 475 U.S. at 586-87)), *cert. denied,* 132 S. Ct. 513 (2011). "'[T]he mere existence of *some* alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cnty.,* 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)). Furthermore, "[i]n ruling on a motion for summary judgment, the district court is not obligated to wade through and search the entire record for some specific facts which might support" a party's claim. *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007) (quotations omitted).

In other words, in deciding "a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott*

*v. Harris,* 550 U.S. 372, 380 (2007)).  Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"– where there is no "'genuine issue for trial'"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).

## DISCUSSION

"The general rule is that the 'surety is bound in the manner and to the extent provided in the obligation.'"  *Cagle, Inc. v. Sammons*, 254 N.W.2d 398, 402 (Neb. 1977) (quoting *Sch. Dist. No. 65R of Lincoln Cnty. v. Universal Surety Co.*, 135 N.W.2d 232 (Neb. 1965)) (citing *W.T. Rawleigh Co. v. Smith*, 7 N.W.2d 80 (Neb. 1942)).  In other words, "'[a] surety cannot be held beyond the precise terms of his contract. . . . The liability of a surety, therefore, is measured by, and will not be extended beyond, the strict terms of his contract.'"  *Dobson Bros. Const. Co. v. Ratliff, Inc.*, No. 4:08CV3103, 2012 WL 1190897, *4 (D. Neb. Apr. 10, 2012) (quoting *Neb. Beef, Ltd. v. Universal Surety Co.,* 607 N.W.2d 227, 233 (Neb. Ct. App. 2000)) (internal quotations omitted).

"Generally speaking, contractors' bonds are of two types: Performance bonds, and labor and material payment bonds."  *Cagle*, 254 N.W.2d at 402.  A bond is "[a] performance bond [if it] guarantees that the contractor will perform the contract."  *Id.* (internal quotation omitted).  It will "usually provide[ ] that if the contractor defaults and fails to complete the contract, the surety can itself complete the contract or pay damages up to the limit of the bond."  *Id.* (internal quotation omitted).  On the other hand, "[a] labor and material payment bond guarantees the owner that all bills for labor and materials contracted for and used by the contractor will be paid by the surety if the

contractor defaults." *Id.* (internal quotations omitted). This type of bond's "only purpose" is "to protect the owner against the claims of those who furnish labor and materials to the contractor," and thus, are able to file mechanics liens "against the owner and payment enforced even though the owner [may have] had no direct dealing with the labor and material men." *Standard Acc. Ins. Co. of Detroit v. Rose*, 234 S.W.2d 728, 731 (Ky. 1950), *cited with approval in Cagle*, 254 N.W.2d at 599-600.

Granite Re argues that it is entitled to summary judgment with respect to PRCS's third cause of action because the Arcon Bond is a performance bond that guarantees only non-payment obligations under the Arcon Subcontract and there is no dispute that Arcon satisfied all of its non-payment obligations under the Arcon Subcontract. PRCS acknowledges that the Arcon Bond is a performance bond. It contends, however, that although performance bonds *generally* relate only to the performance of non-payment obligations, *this* performance bond, under which Granite guaranteed that Arcon would "promptly and faithfully perform said subcontract," incorporates the entire Arcon Subcontract and every obligation contained therein, including Arcon's payment obligations. PRCS asserts that because it has pointed to evidence indicating Arcon failed to comply with certain payment provisions of the Arcon Subcontract, Granite Re's Motion must be denied.

In other words, the parties' dispute revolves around the meaning of the language, "perform said subcontract." The Court will begin its analysis by looking to the language contained in the Arcon Bond. *See Boutilier v. Lincoln Benefit Life Ins. Co.*, 681 N.W.2d 746, 750 (Neb. 2004).

The Arcon Subcontract, which imposes payment obligations on Arcon, is incorporated into the Arcon Bond, and the Arcon Bond states that Granite Re's obligations under the bond are "null and void" if Arcon "faithfully perform[s] said subcontract." The Arcon Bond does not expressly state that it only guarantees non-payment obligations under the Arcon Subcontract. Although this language, by itself, may seem to indicate that Granite Re guaranteed Arcon would perform all of its obligations under the Arcon Subcontract, including its payment obligations,[5] it is uncontroverted that the construction and surety industries distinguish between performance bonds and payment bonds, and language identical, or at least substantially similar, to that contained in the Arcon Bond has been recognized as having a special meaning in the construction industry.[6] That is, a bond that guarantees a construction contract will be "performed" guarantees that the work to be done under the contract will be completed, but does not guarantee that those who perform that work will be paid.[7]

---

[5] *See Farmers Union Co-op. Ass'n v. Mid-States Const. Co.*, 322 N.W.2d 373, 376 (Neb. 1982) ("The liability of Peerless to Co-op is described by the surety bond it executed and the pertinent provisions of the contract incorporated by reference."). *But see Young v. Gen. Ins. Co. of Am.*, 337 N.E.2d 739, 741 (Ill. App. Ct. 1975) (stating that contracts were only "incorporated in[to] the bond to set forth a description of the work to be performed by [the subcontractor.]"), *cited with approval in Neb. Beef, Ltd. v. Universal Sur. Co.*, 607 N.W.2d 227, 233 (Neb. Ct. App. 2000).

[6] *See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1013 (3d Cir. 1980) ("Generally parties will be held to definitions given to words in specialized commercial and trade areas in which they deal."); 11 Williston on Contracts § 32:4 (4th ed.) ("Technical terms or words of art will be given their technical meaning.").

[7] *See In re Versant Props., LLC*, No. 1:10CV98, 2011 WL 1131057, at *8 (W.D.N.C. Mar. 25, 2011) (discussing payment bonds and performance bonds and stating: "[t]he clear distinction between 'payment' and 'performance' . . . a distinction that is universally understood within the construction surety industry . . . lends support to the Court's conclusion that the term 'performance guarantee' refers only to instruments which guarantee to the municipality that the improvements will be *completed*, not to guarantees that contractors who perform work on those improvements will be paid. Construing the term 'completion' to refer to the work performed and not the payment for such work comports with the manner in which the Legislature otherwise uses the term . . . Each use of the word 'completion' in these statutes refers to *finishing* of the work, not to the payment for it."); *cf.* Neb. Rev. Stat. 52-118 (requiring "payment bonds" to pay for material and labor used "in performing the contract."); *id.* at § 39-1407 (emphasis added) ("When the bid is accepted the bidder shall enter into a sufficient bond . . . for the faithful performance of the contract, *and* for the payment of all laborers employed in the performance of the work

Therefore, the Arcon Bond may reasonably be interpreted as guaranteeing only Arcon's non-payment obligations under the Arcon Subcontract. To the extent PRCS is correct that it may also be interpreted as guaranteeing both payment and non-payment obligations under the Arcon Subcontract, it would be ambiguous. *See Plambeck v. Union Pac. R. Co.*, 509 N.W.2d 17, 20 (Neb. 1993) ("Whether a contract is ambiguous is a question of law. . . . A document is ambiguous if a word, phrase, or provision in the document has, or is susceptible of, at least two reasonable but conflicting interpretations.").

The meaning of an ambiguous contract "is a question of fact, and a court may consider extrinsic evidence to determine [its] meaning." *Id.* To the extent that the Arcon Bond is ambiguous, the uncontroverted evidence in the record indicates that it is a "performance bond" that guarantees only non-payment obligations. It is uncontroverted that PRCS provided the form on which the Arcon Bond was executed. Therefore,

---

. . ."); *Cagle*, 254 N.W.2d at 402; *Rose*, 234 S.W.2d at 731. *Compare* Filing No. 11-2 ("SUBCONTRACT PERFORMANCE BOND . . . NOW THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if [Arcon] shall promptly and faithfully perform said subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect. . . . Whenever [Arcon] shall be, and be declared by [PRCS] to be in default under the subcontract, . . . [Granite Re] shall: . . . promptly remedy the default . . . or . . . promptly arrange for the performance of [Arcon]'s obligation under the Subcontract . . . "), *with Rose*, 234 S.W.2d at 730 (distinguishing a labor and material payment bond from a performance bond, and stating with respect to the performance bond: "It is only necessary to say that the performance bond, and denominated as such, contains the usual provisions of that character of bond, and the obligation of the bond is that 'if the contractor shall promptly and faithfully perform said contract (referring to the contract between Powers and Rose), then this obligation shall be void, otherwise it shall remain in full force and effect.' We think this bond can have but one meaning and that is the natural one usually given to such bonds, that it guarantees that if the contractor defaults and fails to complete the contract, then the surety can itself complete the contract, as is authorized by the terms of the bond, or pay the full amount of its obligation thereunder of $5800, as it has done in this case. We think it is unnecessary to further consider this bond."), *cited with approval in Cagle*, 254 N.W.2d at 559-600.

The Court notes that a "performance bond, as a general rule, is deemed not to provide payment protection, unless the bond and the bonded contract contain terms evidencing an intent to benefit unpaid subcontractors and suppliers," and a "[s]tandard form performance bond[ ]" that "name[s] the obligee explicitly and provide[s] expressly that no right of action will accrue to any person or entity other than the named oblige," indicates the lack of intent to benefit unpaid subcontractors and suppliers. 4A Bruner & O'Connor on Construction Law §12:30 (2009 ed.). The Arcon Bond states: "No right of action shall accrue on this bond to or for the use of any person or corporation other than [PRCS]." (Filing No. 11-2.)

"perform said subcontract" must be construed against PRCS.[8]  Furthermore, the email PRCS sent to Arcon prior to the execution of the Arcon Bond indicated that PRCS was concerned only about Arcon "be[ing] able to provide a performance bond." (Filing No. 54-6, at CM/ECF p. 2.)  Finally, the Arcon Bond is nearly identical to PRCS's standard performance bond form, and substantially different from PRCS's standard payment bond form, and it is uncontroverted that the distinction between performance bonds and payment bonds is common and typical in the construction industry.[9]

For the reasons stated above, the Court finds the Arcon Bond guarantees only that non-payment obligations under the Arcon Subcontract will be faithfully performed. PRCS's only claim against Granite Re is with respect to the Arcon Bond, and this claim is based on PRCS's contention that Arcon failed to satisfy its payment obligations under the Arcon Subcontract.  Therefore, Granite Re's Motion will be granted.  Accordingly,

---

[8] *See Metro. Utils. Dist. of Omaha v. Fid. & Deposit Co. of Md.*, 264 N.W.2d 854, 857 (Neb. 1978) (internal citations omitted):

> "In a contract upon a form prepared and regularly used by one of the parties, disputed provisions of doubtful or ambiguous meaning should be construed against the party preparing such document."  Any ambiguity or doubt as to its meaning must be resolved against the party preparing the contract. That principle is peculiarly applicable to guaranties.
>
> The defendant here was the guarantor who furnished the surety bond required by the plaintiff. If an obligee in a guaranty draws it in a form requiring explanation, the guarantor is a favorite of the law in the interpretation of the ambiguous provision. A guarantor is entitled to stand upon the letter of his contract.  His guaranty is not to be extended by a strained construction of the language used.

[9] The Court also notes that the Contract Bond, which the parties agree is a payment and performance bond, states "fulfill this said contract according to the terms and tenor thereof, and shall faithfully discharge the duties and obligations therein assumed," instead of "perform said contract" like the Arcon Bond, and that the Contract Bond expressly makes clear that it secured both payment and non-payment obligations under the contract between NDOR and UPCI, whereas the Arcon Bond makes no specific mention guaranteeing payment obligations under the Arcon Subcontract.

IT IS ORDERED:

1. The Motion for Summary Judgment (Filing No. 54) filed by Defendant Granite Re, Inc., is granted; and

2. Plaintiff Paul Reed Construction and Supply, Inc.'s third cause of action asserting a claim against Granite Re on the Arcon Bond (Filing No. 1, at CM/ECF p. 12 ¶¶ 31-34) is dismissed.

Dated this 5th day of November, 2012.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge